Mr. Levine, good morning, please proceed to the podium. Good morning. May it please the court. What UTC invented is having a swept fan blade with three stages or three regions. The prior arc blades went out and then they went all the way back or all the way forward, depending on whether it's a forward swept or rearward swept blade. The claim deals with the rearward swept blade. It went all the way back. And what UTC said is let's have a third region where instead of going all the way back, it turns and it goes in the opposite direction near the tip. And that's what Claim 23 deals with. And the UTC specification as well as the claim explains the purpose of this reversal or going in the opposite direction is to intercept the shock near the tip. Now, the plain language of Claim 23, the UTC Claim 23, doesn't put this arbitrary stopping point at zero degrees that the district court interpreted the claim. Claim 23 for the inner region says it's defined by a forward sweep angle. For the intermediate region, it says it's defined by a rearward sweep angle. But when you get to the outer region, it says you translate forward until you intercept the shock. It doesn't say rearward sweep angle or forward sweep angle because it was broad enough to encompass both. Did UTC ever enable this? Did they make anything that ever worked? Yes. You mean commercially or in patent? They enabled it commercially. I'm sorry, in the patent, in the specification. I'm asking who did this first. They did it after you did it. Rolls-Royce did it later in terms of the patents. UTC commercialized it later. But the test of who's first in terms of priority is who patents it first. I understand that. I'm wondering if you were the first to enable it and they capitalized only on your first enablement. I think that's right, Your Honor. You were the one that gets all the awards and the credit in the industry for doing this, right? Rolls-Royce got the awards and the credit in the industry because they got the first commercialization. And it's the commercialization that the awards are based on. Who actually made it first? We actually came out with the first patent on it, yes. It was the first patent on translating forward to intercept the shock. What Rolls has is a subset of that, which is translating forward to intercept the shock where it's in the forward swept. And they amend their claim to go back and they had broadly enough stated their original application that they could go back and amend their claim to capture what you'd done, right? What Rolls-Royce did, I'm not sure what they did, is they actually, there was a rejection of the Rolls-Royce claim based on UTC patent. And that's at A-7-5, I'm sorry, A-7-2, well, that's kind of right, A-6-6-3-8-3-9. And in response, Rolls-Royce didn't say, oh no, the UTC patent doesn't disclose forward sweep the tip. Instead what they did is they added this convergent case with the corresponding tip language. And that's something that then even the district court in this case said was legion in the prior art. So Rolls-Royce makes it first, not you. Again, Rolls-Royce commercially made the first commercial. And gets all the awards. Yes, and what we did is we patented it first. We came out with the first patent. Rolls-Royce came out with the second. And you changed your claim after they had done it to capture what they had done. No. What we did is we provoked an interference. And did we copy the claim? Sure. That's what you do in interferences. You copy claims. And that's what interferences are for. Capturing what they had accomplished, not what you had accomplished. Capturing what we had accomplished in our patent and what they had done and now we have done, too, commercially. We'll examine that a little later, I think. Mr. Levin, let me ask you, on this claim 23, which I guess is at A97 of the volume 1 of the joint appendix. Yes. I'm trying to figure out here, it says I have, looking at figure 2 of your, the 931 application. Yep. It says an outer region. Okay, now where exactly on figure 2 is the outer region? I know there's something that's said there. It says an outer region intermediate, I'm sorry, outer region between the intermediate region and the fan casing. Okay. Where exactly do we find the outer region intermediate, between the intermediate region? Are we talking about .40? It explains there's an outward boundary and I'll have to, I think .40 is the first boundary. I think that's between the inner region and the intermediate region. Okay. I think when you can claim in the figure 2 embodiment for between going to the intermediate region and the outer region, it's a later number, it might be 28, but I have to go back and check. It says being translated for relative to a leading edge, what's the leading edge of what? The leading edge of the blade. Okay. As opposed to the other edge on the back of the blade. The leading edge is the one going here. The edge that's labeled 28 here. No, the leading edge is the entire front portion of the blade. That's 28, isn't it? It's 28, yes, I believe so. With the same sweep angle as an outward boundary of the intermediate region. Right. What does that exactly mean, the same sweep angle as an outward boundary of the intermediate region? Put that in layman's terms. It's when you get to the point where you start changing the direction and stop having an increased habit going up in figure 2 embodiment where it's increasing with the increasing radius and you start turning it. It's that place where you start turning it that's the outward boundary of the intermediate region and the beginning of the outer region. Okay. If this court were to rule in your favor, okay, what would happen? It would go back to the district court? If you ruled in our favor that... Say we said the claim construction was erroneous. It would go back to the district court, right? If all you said is claim construction is erroneous and didn't then go to the obviousness issue, then it would go back to district court, yes. At that point, what about... I saw in the record here there were various motions that were filed, I guess, in its complaint in the district court. Rolls-Royce, page 12,411, says, paragraph 27, also seeks reversal of the board's decision to the extent the board ruled against Rollins on motions, claim construction, evidentiary issues, and other issues of fact and law. And I guess they're talking about various 112 arguments they tried to make before the board. No, Your Honor. What would we be talking about there? And the reason it's not the 112 arguments is Rolls-Royce explicitly didn't make them. They originally had talked about making them, but then they decided not to. And because of that, they've waived any 112 arguments. So what we're talking about is if this court reversed on claim construction but decided not to reach the obviousness question, then what we're talking about is it would go back to the district court for a determination of whether there are non-obvious differences between claim 23 and claim 8. Using the two-way test. Using the two-way test and applying KSR, which was not applied by the district court here. Now, what you have here The district court does a pretty convincing job of showing the secondary considerations here supporting obviousness. The secondary considerations here are based upon the wrong claim construction. So if you apply the proper claim construction, that what we have is something that includes both rearward and forward sweep at the tip, then what's being talked about in terms of a claim and commercial success and solving a long-felt need would apply to claim 23 just as well as it applies to claim 8. So it wouldn't provide a non-obvious difference. So what we have here Well, there's more difference than just that sweep angle, right? You've got the convergent sides. Right, which the district court found is very obvious. It's not a non-obvious difference. We look at claims as a whole. And so the claims as a whole would still have full support for non-obviousness under the secondary considerations, right? No, because yes, you're right that you look at the claims as a whole. But in terms of the claims as a whole, looking at claim 23 plus the prior art compared to Rolls-Royce claim 8, you have claim 23, which includes forward and rearward sweep at the tip, and then the prior art, which includes the Schwarr patent, the Stewart patent, all the commercial embodiments out there with convergent casing compared to claim 8. And even the district court said that the convergent part of it's not. You're saying the nexus isn't to the claim. It's to some feature of the claim. The nexus has to be a showing. The law says the nexus is to the claim as a whole. Right. You want to tie it into something that you perceive to be the novel feature, right? Well, the answer is that was the argument. But you're right that if you went back to the district court to ask for determination of obviousness, the district court would then have to take convergent casing into account. But given what the district court said about convergent casing and how the prior art is legion with examples of convergent casing, even an example of convergent casing with a swept fan blade, which is the Stewart patent, I don't think that the nexus would be able to be shown. But that's something that we'd see. Well, it's shown if they're the first one who really made the invention. Well, not necessarily because you've got to show the nexus that people are buying the Rolls Royce. Who is the industry giving the acclaim to on this? They're giving the acclaim. You've asked that. They gave the acclaim to Rolls Royce, who had the first commercial embodiment. But then you have to tie that to the reason for that claim as compared to what's in our claim because you're talking about the non-obvious differences between the claims. Your Honor, I wanted to reserve four minutes for rebuttal. I'm a little bit past that. I can stop now, or if you have more questions, I can answer them. Up to you. All right. I'll reserve three and a half minutes, what's left for rebuttal. Can I just ask one other question? What's the reason for the industry acclaim, the winning the Flight International Award and all of that, under your theory? Why does the industry, who knows who's got the patents and who's doing the work and who's enabling and who is actually advancing flight, why do they give it all to the other guys? Because they commercialized it first. And that's not the test in the interference. It's not who came out with the first commercial embodiment. And let me add to that. What's the reason under your theory is just that because they're better engineers? Well, there's actually the reason that UTC shelved their program for a while was because the blades, having these swept fan blades, which have a lot more air in them. They're grown as a single crystal, aren't they? Very, very. It's too heavy. And back then, they didn't have. They shatter if there's any vibration. And so this was kind of teaching against the art, wasn't it? No. It's because in order to get rid of the weight, you had to have hollow blade technology. And in other words, the fan blades used to be solid, solid metal. But then they came out with hollow blades. And the hollow blade technology didn't come out until a little bit later in the 90s. And Rolls-Royce came out with it earlier than UTC. So as a result, Rolls-Royce was able to commercialize this earlier because they were able to address the weight issue. That's something that's completely irrelevant to the difference between Claim 8 and Claim 23. All right. Reserve the rest of the time for rebuttal, Your Honor. Thank you. Mr. Berridge. May I please the Court? Rolls-Royce Claim 8, as we all know, expressly requires a rearward sweep angle in the intermediate region and a forward sweep angle in the outer region. That construction provides the stability that had never been achieved by a fan blade before a rearward swept fan blade, which the rearward sweep gives you a lot of efficiency improvements, but the blade being unstable means it can't be used. The record actually shows that on March 23, 1999, contemporaneous email, UTC stopped pursuing aft sweep because the stability did not meet goal. They couldn't make a blade that would stay in the engine and fly an airplane. Did they make anything before you did? In terms of physical blades, none. Did they make anything work? Not swept blades. Certainly they have engines flying, but not swept blades. That's correct. Anything within the claimed invention? No, absolutely not. There had never been before a blade that had a rearward sweep in the intermediate region and then not only eliminated the sweep at the tip, but moved to a different forward sweep. Why didn't you argue enablement? Your Honor, we tried to limit the case to one issue. This case may lead into future litigations. We focused the interference on the fact that two different inventions were made. The claim of Claim 23 of UTC is a very broad and confusing claim, but reading it- It's never enabled. I don't believe the scope. Well, I think properly construed, it is enabled. That claim is limited to the rearward swept fan blade that's described throughout the specification that achieves coincidence of the two shocks that are described in that specification. That is the whole reason for being of that invention is to make the end wall shock that doesn't move become coincident with the passage shock that stays attached to the leading edge of the blade. But they didn't enable a forward sweep? Absolutely not. No, sir. And they didn't mention it anywhere in the application. We have a lot of overlap between the construction issue and the obviousness issue. Am I right that these are grown as a single crystal and are very delicate for that reason? I'm not certain, Your Honor. I don't know that. Let me ask you the same question I asked Mr. Levine. If this case were to go back, contrary obviously to the position you're arguing, what contentions would you advance in the district court? Your Honor, I think the contentions have pretty much been made and have been answered by the district court already. If the claim construction were reversed, the issue would then be obviousness over that claim in view of the prior art, which is the same specification that supports that claim. That specification teaches that you cannot move the passage shock into the passage and achieve stability. The passage stock, according to that specification, moves with the leading edge, and so you could never intercept some unintercepted passage shock. It's always intercepted according to that. So you're saying if it goes back, there wouldn't be any assertion of 112 issues? No, not in this case, not in the interference. I think the understanding of the two shocks is something that the UTC wants to avoid because their patent is so focused on this concept of bringing the two shocks into coincidence. Figure three, which we've got up on the board, really shows that the passage shock that is always attached to the leading edge of the blade moves with that leading edge until it meets the end wall shock. What that means is that the Rolls-Royce invention is impossible because what the Rolls-Royce invention did by creating a forward sweep angle at the tip moved that passage shock back into the passage. So if there's an end wall shock, it would be moving away from that end wall shock. In fact, the other thing that's interesting about this... Mr. Baird, there's one question. You're referring to figure three, and you've said the leading edge. That's what's marked 22? It's 28. Well, no, it's 28. 28 is the leading edge. 22 is the suction surface here. Okay. Actually, I think the number 22 might be referring to the blade as a whole. I'm sorry. 22 is the entire blade of the UTC invention. 22 prime is the prior art blade. And 28 is the leading edge, you say? 28 is the leading edge. You're looking down on the blade here. So you're looking from the top down. You're not looking in the figure two direction where you're looking sideways at the blade. I see. Okay. And interestingly, this figure shows the sweep angle that we're talking about. It's shown directly here. Sigma two is the sweep angle that we're talking about. And this plane 56 is the plane that defines the zero sweep angle. So here we have, as shown by UTC's own patent, the rearward sweep angle. And to move this leading edge far enough forward to cross that plane, you would have to come over here, which is off the figure, basically. And both experts testified would distort it and make it an unworkable blade. So the preferred embodiment, which the UTC specification actually says, shows the beneficial effects of the invention and its two shocks and distinguishes them from the prior art, would leave it impossible to achieve a forward sweep angle and still have a workable fan blade. I'm looking at the dates here when UTC files its reissue. It files its reissue after you file your patent. After our patent issue, yes, sir. So they are really revising their claims to cover the invention that you made and got industry a claim for, right? Absolutely, Your Honor, and that they did not disclose. And the industry gave all the credit to you throughout. That's correct, Your Honor. And, in fact, all three engine manufacturers adopted the Rolls-Royce design that is not disclosed in that patent and that no one says is actually disclosed in the patent. But it is limited, the claim eight of the Rolls-Royce patent, does limit you to that embodiment that has the stability because it has the forward sweep angle in combination with the convergent surfaces. The convergent casing, sorry. In fact, the timing in this case is very interesting throughout. And I wanted to point out a couple of errors in the reply brief that don't show up from the evidence. One of them is a timing error. The UTC reply brief, page 32, refers to a 1997 UTC project where there was forward sweep at the tip of a fan blade design of UTC. That design never actually worked. It wasn't a rearward swept blade. It was a radial blade. So there was no change of direction of sweep angle. And, in fact, it was not, as the brief says, two years before the Rolls-Royce references. It was actually a month after the Rolls-Royce European patent application on the Rolls-Royce invention was published. So I just wanted to correct that part of the record. And that actually shows up in some testimony that's not in the joint appendix. It's trial testimony, pages 509 to 510. But because it was in the reply brief, we didn't get it into the appendix. You heard my exchange with Mr. Levine in which he said that the industry acclaim, the commercial success, the fulfillment of a long felt need, all of those various important things that the district court relied on don't really refer to the improvement over the prior arc. Your Honor, I have to disagree. The improvement made by Rolls-Royce, as explicitly defined in its Claim 8, includes that convergent casing coupled with the forward sweep at the tip. The forward sweep at the tip is the thing that no one had ever done before in a rearward swept blade. People had convergent casings before but never in that combination. The UTC patent, I think even counsel for UTC acknowledged that their claim in their construction, which we disagree with, would cover rearward or forward swept tips. But in the 30B6 deposition in this case, UTC admitted that that forward sweep at the tip was critical to stability. Without it, you can't achieve it. Their contemporaneous documents say the same thing. If we adopt the board's broad claim construction, then if I hear you right, you're saying your non-obviousness depends on the whole combination, even though the convergent sides was pretty well known in the art as well as, well, according to the broad interpretation, the forward tilt is also known in the art. If I understand your question correctly, I think the board, even under the broadest interpretation, even given UTC's interpretation, the Rolls-Royce claim is non-obvious. The forward sweep at the tip is a critical part of that non-obviousness, both from the secondary considerations viewpoint, but also from the fact that the UTC patent itself, which is prior art to the Rolls-Royce claim, teaches a way from the Rolls-Royce invention. It says that you couldn't achieve the stability by moving the passage shock back because it moves with the leading edge and teaches ways to move the leading edge that will not give you a forward sweep angle. In fact, translated forward is another claim limitation that UTC talks about and saying translated forward can either be this forward along the axis of the engine, circumferential sideways of the engine, or along the relative velocity vector. In any of those directions, you still won't achieve a forward sweep angle if you get the coincidence of the two shocks that UTC is requiring. The two shocks, as you can see here, the distance moved by the leading edge to make those two shocks coincident is here. In this direction, you would be out here before you get a forward sweep angle. In the relative velocity vector direction, you would move the leading edge up that way, but you have to move just enough to get the two shocks coincident. That decreases the sweep angle, as UTC's patent teaches, but gets nowhere near a forward sweep angle. Similarly, in the circumferential direction, you would be moving the two shocks about this far, nowhere near the distance necessary to achieve a forward sweep angle. In no sense does the UTC patent contemplate or give any option for a forward sweep angle. It teaches that in all the embodiments, the way you achieve the coincidence of the shocks, which it absolutely requires, is with a rearward sweep angle. It says that explicitly in every embodiment. There's a rearward sweep angle at the tip. Sorry, in every rearward sweep embodiment. In every embodiment, even the forward sweep embodiment, we don't talk about much. They still call it the non-increasing sweep angle. It's non-increasing from a place where the sweep angle is at the maximum in the blade, as the experts all agreed. It can either stay at that maximum, in this case rearward sweep angle, or decrease. There's no suggestion that the sweep angle be eliminated entirely, much less that a new sweep angle be created in the other direction at the tip. I'd also like to point out, in terms of the translated forward, we do believe this claim, as the district court held, requires translated forward to be in the rather natural forward direction along the axis of the engine. I'd like to mention that in the prosecution history of UTC's reissue application, it actually agreed with that. At a point, it's page 7572, UTC had to lay out the section 112 support for its claim. And it laid it out in a chart. And next to the language translated forward relative to a leading edge, with the same sweep angle as an outward boundary of the intermediate region, UTC, on the right-hand side of that chart, inserted the phrase translated axially forward relative to a conventional blade, which is exactly what they disclosed, exactly what figure three shows, axially forward. So that's why we don't need to focus on section 112 in validity. Their claim can be construed to be supported by the specification, if you construe it to say what the specification actually says the words mean. One other point I'd like to get, in the reply brief at page four, UTC identifies what's crucial to its interpretation of translated forward. And it says- What page of the reply brief? The reply brief, page four. It's about just under the block quote. That quote translated forward, close quote, is quote relative to, close quote, the quote sweep angle, close quote, is crucial to the proper construction of this claim term. The three sets of quotes and close quotes in there are because the claim doesn't actually say that. The claim says translated forward relative to a leading edge with the same sweep angle as an outward boundary of the intermediate region. It's not talking about forward in the sense of a sweep angle, which the experts have testified. Sweep angles, forward in a sweep angle changes over the entire height of the blade. The blade curves around and the sweep angle direction changes. So forward does mean upstream in the axial flow, which is based on this plane that moves as you go down the blade. And down from the bottom of the blade, it's more nearly perpendicular to the axis. At the top of the blade, it's rotated around. But the only places, as the district court held, the patent says translated forward is in reference to the axially forward direction. And again, when you translate axially forward, as the claim says, and as the patent says, you can't, and as the experts agree, you can't achieve a forward sweep angle and still have a fan blade. Thank you. Thank you. Dr. Levine. I want to make a few points in response. First of all, in response to Judge Schall's question earlier, I looked and the leading edge is 28. The trailing edge is 30. So the leading edge is the part that hits the air as the fan blades are rotating. The trailing edge is the backside of the blade, which is less interesting for purposes of this patent. Second, Mr. Barrage talked about the Rolls-Royce invention being impossible. Using the UTC specification and the preferred embodiment, it's impossible to achieve forward sweep. But really all he was doing was looking at the particular drawings and saying, in those particular drawings that shows the end wall shock, you don't need to go forward in order to get there. But this patent is not limited to the particular drawings. There's plenty of Federal Circuit law on that. And what they need to show in order to restrict us to just rearward sweep is some sort of disclaimer or language of manifest exclusion or restriction, and you don't find that in the 931 specification. But all the other elements of Claim 23 are described with respect to a sweep angle. Exactly, and that's my point. My point is when the other elements, it says it's rearward sweep. How does the specification teach a person of skill how to implement a forward sweep? What they teach the person of skill to do is where you were increasing before in the prior art, now you're going to be non-increasing or decreasing. So now you're going to go in the other direction. Something that might be helpful on this to explain it is page 8860 of the record, because what that shows is some UTC blades and then the Rolls-Royce patent. And what you see is that in UTC's blades that they worked on earlier, if you go up and the sweep angle changes and you make the turn, it starts reversing. The Rolls patent, which is in the dark here, does the same thing. You start going up and then you start reversing. Now the fact that the Rolls example goes over this dashed line for zero isn't something that the UTC specification ever talks about as being important. Because what's important is just making the turn so that you can get the interception of the shock and the person of ordinary skill in the art would then go as far as they need to in order to intercept the shock. There's no disclaimer of stopping at zero. One last point in my 47 seconds remaining, which is on Judge Rader's point about secondary considerations. If this court interprets the claim as UTC proposes and as the board interpreted the claim and then sends it back down for a new determination of obviousness, two points about what would happen on secondary considerations. Number one, then the only difference between the claims would be between Claim 23 and Claim 8 would be in the convergent casing. So that would be what the court would have to focus on in terms of the prior art versus the claim. It is the claim as a whole, but the convergent casing would be the only difference. Second, we can't forget about Claim 24. UTC had a proposed Claim 24. The board said it wasn't going to consider it because it didn't need to. It was moot because of its finding in Claim 23. But if you look at Claim 24, that's where UTC explicitly included convergent casing in the claim. So then in the obviousness determination, if it went back down on remand, the court would look at both Claim 23 versus Claim 8 as well as Claim 24 versus Claim 8. Thank you. Thank you. The appeal is submitted.